UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GLOBAL TECH INDUSTRIES GROUP,    :
INC., et al.,

    :

            Plaintiffs,

    :              17 Civ. 3727 (AJP)

       -against-

    :       **OPINION & ORDER**

GO FUN GROUP HOLDINGS, LTD, et al.,

    :

           Defendants.

    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

Plaintiffs instituted this action on May 17, 2017 to enforce an agreement effectuating acquisition of defendants' corporate assets. (Dkt. No. 1: Compl. ¶ 1.) On April 10, 2017—forty-seven days before this case was filed—defendants had instituted a parallel action in the High Court of Hong Kong seeking to declare the same agreement null and void. (Dkt. No. 37: Lo Aff. ¶ 5; Dkt. No. 35: Go Fun Br. at 3.) Presently before the Court is defendants' motion to dismiss this suit pursuant to the abstention doctrine and/or forum non conveniens. (Dkt. No. 34: Go Fun Notice of Mot.) The parties have consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 31.) For the reasons set forth below, defendants' motion is DENIED.

## FACTS

Plaintiff Global Tech Industries Group, Inc. ("GTII") is a holding and operating company incorporated in Nevada with its principal place of business in New York City. (Dkt. No. 7: Compl. ¶¶ 14-16.) GTII also "is a fully reporting company that is publicly traded on the Over-the-Counter-Market." (Dkt. No. 27: GTII Opp. Br. at 4.) Plaintiff GT International Group, Inc. is a Wyoming corporation and subsidiary of GTII. (Compl. ¶ 17.) GTII and GT International Group

share office space in New York City.  (Id. ¶ 18.)  GTII Chief Executive Officer David Reichman is a United States citizen with his primary residence in New York City.  (Id. ¶ 19.)

Defendant Go Fun Holdings Ltd. ("Go Fun") is a British Virgin Islands corporation with its principal place of business in Hong Kong.  (Id. ¶ 20; Dkt. No. 35: Go Fun Br. at 2.) Defendant Go F&B Holdings Ltd. ("Go F&B") is a Hong Kong corporation with its principal place of business in Hong Kong.  (Compl. ¶ 21; Go Fun Br. at 2.)  GTII alleges that Go Fun is "the sole shareholder, director, decision maker & control party" of Go F&B.  (Compl. ¶¶ 20-21; GTII Opp. Br. at 6.)  GTII further alleges that Go F&B "is the owner and sole shareholder of" four food/beverage and restaurant "target companies" whose corporate assets are the subject of the at-issue agreement.  (Compl. ¶¶ 23-25; GTII Opp. Br. at 4, 7.)  Individual defendants Tam Yiu Cheun a/k/a Sam Tam and Cheung Yee Man a/k/a Elaine Cheng are directors of Go F&B.  (Compl. ¶¶ 5, 26-27; Go Fun Br. at 3.)  Tam and Cheng are residents of Hong Kong.  (Compl. ¶¶ 26-27.)

GTII alleges that negotiations between the parties began when defendants "vocalized a desire to 'go public' and access the U.S. Capital Markets through a small/micro cap listing on the [Over-the-Counter-Market] by being acquired by a traded company and being spun off after 366 days by the acquiring parent." (GTII Opp. Br. at 4.)  Communications between the parties were in English, and "[p]rior to and after entering into the December 30, 2016 agreement, Go Fun was advised by and information was exchanged through their U.S. based lawyer" licensed in New York. (Id.)  The parties met in person in Hong Kong in February, April, July and December 2016.  (Dkt. No. 36: Fong Aff. ¶ 8; Go Fun Br. at 4 & n.4; see also GTII Opp. Br. at 8.)  Fong Yiu Yuen asserts that he "personally participated [in] all of the negotiations" on behalf of Go Fun and "attended all meetings between the" parties, and that GTII's "representative at each such meeting was David

Reichman; [Go Fun] had several attendees, including [Fong], at such meetings most of whom do not speak English." (Fong Aff. ¶ 8.)

Negotiations produced two preliminary agreements dated February and April 2016 (GTII Opp. Br. at 4; see also Dkt. No. 27-1: 2/8/16 Agreement; Dkt. No. 27-2: 4/18/16 Agreement), both of which contain clauses specifying "the state and federal courts in the City of New York" as the proper forum for resolving disputes arising under those agreements (2/8/16 Agreement ¶ 9; 4/18/16 Agreement ¶ B-12). In December 2016, Reichman traveled to Hong Kong to execute the final Stock Purchase Agreement (the "Agreement") on which this case is based. (Compl. ¶¶ 29-30; GTII Opp. Br. at 4, 7-8; Go Fun Br. at 3-4; see also Stock Purchase Agreement.) Unlike the preliminary agreements, the Stock Purchase Agreement states only that it should "be governed by and construed in accordance with the laws of the State of Nevada"; it does not contain a forum selection clause. (See Stock Purchase Agreement ¶ 11.) The Agreement contains an integration clause, stating that the Agreement supercedes "any prior understanding or representation of any kind preceding the date of th[e] Agreement." (Id. ¶ 10.) Further, individual defendants Tam and Cheng agreed to indemnify GTII in certain situations. (Compl. ¶¶ 5, 56; Dkt. No. 7-1: Stock Purchase Agreement, Schedule B, ¶ 9.)

Pursuant to the Agreement, Go Fun paid a $126,000 deposit to GTII. (Compl. ¶ 32.) The Agreement provided for monthly payments of $91,667 to GTII, but Go Fun ceased making such payments in January or February 2017. (See Compl. ¶ 31; GTII Opp. Br. at 8.) "The destination of said funds was New York." (GTII Opp. Br. at 13.) Go Fun also "was to provide substantive materials to GTII relating to the target companies," such as corporate business plans and financial information. (Compl. ¶ 33; see also Stock Purchase Agreement, Schedule B.) Such information was "to be prepared in English for filing with U.S. regulators and for inclusion in Global Tech disclosure

filings." (GTII Opp. Br. at 15.) Although Go Fun apparently contacted an auditor with expertise in compiling such materials (see Dkt. No. 27-8: 9/21/16 UHY Letter), the materials never were disclosed to GTII as required under the Agreement (Compl. ¶ 33; GTII Opp. Br. at 8).

On March 23, 2017, GTII sent a notice of default to Go Fun and its representatives. (GTII Opp. Br. at 8; see also Dkt. No. 27-9: 3/31/17 Go Fun Letter.) On March 31, 2017, Go Fun acknowledged receipt of the notice of default and requested that GTII "withhold commencing any legal action" until April 10, 2017 while Go Fun consulted with counsel. (3/31/17 Go Fun Letter; GTII Opp. Br. at 8.) Go Fun filed its parallel action against GTII in the High Court of Hong Kong on April 10, 2017. (Dkt. No. 37: Lo Aff. ¶ 5; Go Fun Br. at 3.)

## ANALYSIS

### I. GO FUN'S MOTION TO DISMISS PURSUANT TO THE ABSTENTION DOCTRINE IS DENIED

#### A. Standards Governing Motions Under Federal Rule Of Civil Procedure 12(b)(1) And The Abstention Doctrine

Courts in this Circuit consider a "motion to dismiss based on the abstention doctrine . . . as a motion made pursuant to Rule 12(b)(1)." Kingsley v. N.Y.C. Hous. Auth., 16 Civ. 0169, 2016 WL 5939359 at *2 n.2 (S.D.N.Y. Oct. 6, 2016); 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, Fed. Prac. & Proc. Civ. § 1350 (3d ed. 2017) ("Courts have recognized a variety of other defenses that one normally would not think of as raising subject-matter jurisdiction questions when considering a Rule 12(b)(1) motion, such as claims that . . . the subject matter is one over which the federal court should abstain from exercising jurisdiction."). In considering a Rule 12(b)(1) motion, a court "may refer to evidence outside the pleadings." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

In <u>Colorado River</u>, the Supreme Court provided guidance on when a federal court should abstain from exercising jurisdiction due to a parallel state proceeding. <u>Colorado River Water Conservation Dist.</u> v. <u>United States</u>, 424 U.S. 800, 817-19, 96 S. Ct. 1236, 1246-47 (1976); <u>see also</u>, e.g., <u>Garfield</u> v. <u>Ocwen Loan Servicing, LLC</u>, 811 F.3d 86, 93 (2d Cir. 2016) (<u>Colorado River</u> "created a limited abstention doctrine in the context of ongoing, parallel state proceedings"). The doctrine is a narrow one given the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." <u>Colorado River Water Conservation Dist.</u> v. <u>United States</u>, 424 U.S. at 817, 96 S. Ct. at 1246. "[T]he existence of a parallel foreign proceeding does not negate that obligation." <u>Kitaru Innovations Inc.</u> v. <u>Chandaria</u>, 698 F. Supp. 2d 386, 390 (S.D.N.Y. 2010); <u>see also</u>, e.g., <u>Royal & Sun All. Ins. Co. of Canada</u> v. <u>Century Int'l Arms, Inc.</u>, 466 F.3d 88, 92 (2d Cir. 2006) ("The mere existence of parallel foreign proceedings does not negate the district courts' 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'").

In <u>Royal & Sun Alliance</u>, the Second Circuit applied <u>Colorado River</u> abstention principles in the context of parallel foreign proceedings.[1] The court opined that "[g]enerally, concurrent jurisdiction in United States courts and the courts of a foreign sovereign does not result in conflict" that raises comity concerns. <u>Royal & Sun All. Ins. Co. of Canada</u> v. <u>Century Int'l Arms, Inc.</u>, 466 F.3d 88 at 92. "Rather, [p]arallel proceedings in the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." <u>Id.</u> (quotations omitted). Thus,

> [t]he task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not to articulate a justification <u>for</u> the exercise of jurisdiction,

---

[1] Such abstention, based on "comity of the courts," <u>see</u> <u>Royal & Sun All. Ins. Co. of Canada</u> v. <u>Century Int'l Arms, Inc.</u>, 466 F.3d at 92, has been called "international comity abstention." <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Jenkins</u>, 687 F. App'x 71, 72 (2d Cir. 2017).

but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction. The exceptional circumstances that would support such a surrender must, of course, raise considerations which are not generally present as a result of parallel litigation, otherwise the routine would be considered exceptional, and a district court's unflagging obligation to exercise its jurisdiction would become merely a polite request.

Id. at 93 (citations omitted).

When deciding whether to abstain "[i]n the context of parallel proceedings in a foreign court, a district court should be guided by the principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." Id. at 94.

The Second Circuit in Royal and Sun Alliance instructed courts to use a non-exhaustive list of factors when contemplating a stay in favor of a foreign proceeding, including: (1) the similarity of the issues; (2) the order in which the actions were filed; (3) the adequacy of the alternate forum; (4) the potential prejudice to either party; (5) the convenience of the parties; (6) the connection between the litigation and the United States; and (7) the connection between the litigation and the foreign jurisdiction.

C.D.S., Inc. v. Zetler, 198 F. Supp. 3d 323, 331 (S.D.N.Y. 2016) (citing Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc., 466 F.3d at 94).[2] "The abstention decision rests on a careful balancing of the important factors . . . as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Kitaru Innovations Inc. v. Chandaria, 698 F. Supp. 2d at 390 (quotations omitted).

**B.    Application**

---

[2]     Accord, e.g., Norte v. Worldbusiness Capital, Inc., 14 Civ. 10143, 2015 WL 7730980 at *14 (S.D.N.Y. Nov. 24, 2015); Thornton Tomasetti, Inc. v. Anguillan Dev. Corp., 14 Civ. 7040, 2015 WL 7078656 at *3 (S.D.N.Y. Nov. 13, 2015); Leopard Marine & Trading, Ltd. v. Easy St., Ltd., 15 Civ. 3064, 2015 WL 4940109 at *3 (S.D.N.Y. Aug. 6, 2015); Chigirinskiy v. Panchenkova, 14 Civ. 4410, 2015 WL 1454646 at *12 (S.D.N.Y. Mar. 31, 2015); Kitaru Innovations Inc. v. Chandaria, 698 F. Supp. 2d at 390.

Go Fun asserts that the Court should abstain in favor of the Hong Kong action because: the parties are identical apart from the addition of individual defendants Sam Tam and Elaine Cheng in this suit (Dkt. No. 35: Go Fun Br. at 6-7); both actions concern enforcement of the Stock Purchase Agreement and defenses thereto (id. at 7); the Hong Kong action was filed forty-seven days before GTII commenced this action (id. at 7-8); all defendants in this action are based in Hong Kong (id. at 8); the Stock Purchase Agreement was negotiated and executed in Hong Kong, and it concerns the assets of Hong Kong-based corporations (id. at 8-9); GTII could "raise each and every one of its common law claims for relief under existing Hong Kong law" and "the Hong Kong court [would] have the authority to provide Plaintiffs the full range of remedies substantially similar to those available under U.S. law" (id. at 9-10); Hong Kong "has a bilingual system" and the individual defendants and some "key" witnesses do not speak English (id. at 10); and if both actions proceed, there is a risk of inconsistent rulings and resulting comity concerns (id.).

GTII responds that although the Hong Kong action was filed first, that action "has not been served upon the Plaintiffs (GTII), no parties have appeared to defend, none have retained counsel and there is no indication that service outside of Hong Kong . . . was authorized in accordance with the Rules of The High Court." (Dkt. No. 27: GTII Opp. Br. at 10-12.) In this action, on the other hand, GTII has served defendants; defendants have retained counsel that has entered an appearance on behalf of the corporate defendants and a "special appearance" on behalf of the individual defendants; and the parties have briefed the instant motion challenging venue. (Id. at 11-12; see also Dkt.: 9/29/17 Minute Entry.) GTII also argues that to the extent U.S. and Hong Kong courts recognize similar common law claims and remedies (as Go Fun asserts), this Court serves as an adequate forum for resolution of Go Fun's counterclaims and defenses. (GTII Opp. Br. at 12.)

After balancing all relevant factors, the Court concludes there are no "exceptional circumstances" in this case justifying abstention.  <u>Royal & Sun All. Ins. Co. of Canada</u> v. <u>Century Int'l Arms, Inc.</u>, 466 F.3d 88, 93 (2d Cir. 2006); <u>accord</u>, <u>e.g.</u>, <u>In re Kingate Mgmt. Ltd. Litig.</u>, 09 Civ. 5386, 2016 WL 5339538 at *35 (S.D.N.Y. Sept. 21, 2016) ("Because the Court finds no exceptional circumstances warranting abstention from the exercise of jurisdiction at this time, the Defendants' Motion to dismiss on comity grounds is DENIED."); <u>C.D.S., Inc.</u> v. <u>Zetler</u>, 198 F. Supp. 3d 323, 335 (S.D.N.Y. 2016) ("Upon review of the totality of the circumstances in this case, the Court is not persuaded that exceptional circumstances exist in favor of staying the action or dismissing the case.").

Similarity of parties and issues commonly will exist in parallel actions.  <u>See</u>, <u>e.g.</u>, <u>Kitaru Innovations Inc.</u> v. <u>Chandaria</u>, 698 F. Supp. 2d 386, 391 (S.D.N.Y. 2010) ("No exceptional circumstances exist here.  Indeed, the circumstances Defendants cite—for example, the similarity of the parties and issues presented and the burden of litigating in two forums simultaneously—are commonly present when a parallel foreign proceeding is ongoing.").  Moreover, commercial litigation involving foreign parties and concerning foreign corporations and/or their assets is not unusual in this District, or in federal courts generally.  <u>Cf.</u>, <u>e.g.</u>, <u>In re Alcon S'holder Litig.</u>, 719 F. Supp. 2d 263, 268 (S.D.N.Y. 2010) (discussing "common cases in which plaintiffs commence lawsuits in United States courts to adjudicate disputes entailing alleged losses suffered from commercial transactions . . . that occur predominantly in a foreign country").

The Court gives little weight to the first-filed factor.  Go Fun filed its Hong Kong action on April 10, 2017 after receiving GTII's notice of default and requesting that GTII "please withhold commencing any legal action" until April 10, 2017.  (<u>See</u> page 4 above.)  In the Hong Kong action, Go Fun seeks, <u>inter alia</u>, "a declaration that [the] Stock Purchase agreement . . . is null,

void and procured by fraud," as well as "a declaration that the Stock Purchase Agreement may be avoided and rescinded because it was entered into as the result of misrepresentation and duress." (Go Fun Br. at 3.) "[I]n domestic litigation, it is well settled that the general preference for deferring to the first-filed action does not apply when the first-filed action seeks declaratory relief in response to a direct threat of litigation." Schenker A.G. v. Societe Air France, 14CIV4711, 2016 WL 1465353 at *3 (E.D.N.Y. Apr. 14, 2016) (citing Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc., 522 F.3d 271, 276 (2d Cir. 2008)); cf., e.g., 17 Moore's Federal Practice § 111.13[1][c][i] (3d ed. 2017) ("[T]he weight given to the plaintiff's choice [of forum] may be lessened in declaratory judgment actions in which the plaintiff has filed a preemptive action in order to deprive the 'natural plaintiff' of its choice of forum."). The policies underlying this principle apply with equal force to the facts of this case. (See also GTII Opp. Br. at 14-15.)

The Court is unpersuaded by the holding in Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs. Inc., 949 F. Supp. 1123, 1127-30 (S.D.N.Y. 1997), the case upon which Go Fun primarily relies to support its abstention argument. (See generally Go Fun Br. at 5-10.) To begin, Dragon Capital was "decided before the Second Circuit's decision in Royal & Sun Alliance" and "[a]ccordingly, th[e] court[] did not apply the 'exceptional circumstances' test required under Royal & Sun Alliance." Kitaru Innovations Inc. v. Chandaria, 698 F. Supp. 2d at 391 n.4. Moreover, "[i]n Dragon Capital, the Court deferred to a proceeding in Hong Kong, where that suit had been filed a full year and a half before the U.S. action, had progressed beyond its initial stages, and had been filed by the Plaintiff." Id. Here, the parallel actions were filed only forty-seven days apart, and Go Fun's Hong Kong action has not progressed as far as this case. (See pages 4, 7 above; see also GTII Opp. Br. at 10-12.) Dragon Capital's holding is not persuasive given developments in the law and in any event is factually distinguishable.

Because Go Fun fails to demonstrate any "exceptional circumstances," <u>Royal & Sun All. Ins. Co. of Canada</u> v. <u>Century Int'l Arms, Inc.</u>, 466 F.3d at 93, and otherwise fails to counter "the balance heavily weighted in favor of the exercise of jurisdiction," <u>Kitaru Innovations Inc.</u> v. <u>Chandaria</u>, 698 F. Supp. 2d at 390 (quotations omitted), its motion to dismiss on the basis of the abstention doctrine is <u>DENIED</u>.

## II.    GO FUN'S MOTION TO DISMISS ON <u>FORUM NON CONVENIENS</u> GROUNDS ALSO IS DENIED

"The decision to dismiss a case on <u>forum non conveniens</u> grounds 'lies wholly within the broad discretion of the district court.'" <u>Iragorri</u> v. <u>United Techs. Corp.</u>, 274 F.3d 65, 72 (2d Cir. 2001) (en banc).[3/]    The Second Circuit has articulated a three-step analysis that guides that discretion.  <u>See</u>, <u>e.g.</u>, <u>Norex Petroleum Ltd.</u> v. <u>Access Indus., Inc.</u>, 416 F.3d 146, 153 (2d Cir. 2005) ("Although district courts enjoy broad discretion in applying [<u>forum non conveniens</u>], this court, sitting <u>en banc</u> in <u>Iragorri v. United Technologies Corp.</u>, outlined a three-step process to guide the exercise of that discretion."), <u>cert. denied</u>, 547 U.S. 1175, 126 S. Ct. 2320 (2006).

### A.    Step One: Plaintiffs' Choice Of Forum Is Entitled To Considerable Deference

"First, the district court determines the 'degree of deference properly accorded the plaintiff's choice of forum.'" <u>Spencer Stuart Human Res. Consultancy Co.</u> v. <u>Am. Indus. Acquisition Corp.</u>, 17 Civ. 2195, 2017 WL 4570791 at *4 (S.D.N.Y. Oct. 12, 2017).

---

[3/]    <u>Accord</u>, <u>e.g.</u>, <u>Simmtech Co.</u> v. <u>Citibank, N.A.</u>, 634 F. App'x 63, 64 (2d Cir. 2016); <u>Wenzel</u> v. <u>Marriott Int'l, Inc.</u>, 629 F. App'x 122, 124 (2d Cir. 2015); <u>In re Herald</u>, 540 F. App'x 19, 26 (2d Cir. 2013), <u>cert. denied</u>, 135 S. Ct. 1701 (2015); <u>Villella</u> v. <u>Chem. & Mining Co. of Chile Inc.</u>, 15 Civ. 2106, 2017 WL 1169629 at *4 (S.D.N.Y. Mar. 28, 2017); <u>Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S.</u> v. <u>Kyrgyz Republic</u>, 12 Civ. 4502, 2016 WL 5793399 at *4 (S.D.N.Y. Sept. 30, 2016); <u>Crescendo Mar. Co.</u> v. <u>Bank of Commc'ns Co.</u>, 15 Civ. 4481, 2016 WL 750351 at *7 (S.D.N.Y. Feb. 22, 2016).

---

Any review of a <u>forum non conveniens</u> motion starts with "a strong presumption in favor of the plaintiff's choice of forum." Indeed, it is generally understood that, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." In applying this general presumption, courts nevertheless recognize that "the degree of deference given to a plaintiff's forum choice [can vary] with the circumstances."

<u>Norex Petroleum Ltd.</u> v. <u>Access Indus., Inc.</u>, 416 F.3d 146, 154 (2d Cir. 2005) (citations omitted), <u>cert. denied</u>, 547 U.S. 1175, 126 S. Ct. 2320 (2006).[4]

When determining the proper amount of deference accorded to the plaintiff's choice of forum, the Second Circuit requires application of a "sliding scale," whereby the factors indicating that plaintiff's choice was motivated by "genuine convenience" are weighed against factors "indicative of forum shopping, that is, plaintiff's pursuit not simply of justice but of 'justice blended with some harassment.'" <u>Norex Petroleum Ltd.</u> v. <u>Access Indus., Inc.</u>, 416 F.3d at 154-55.[5] Factors favoring deference to the plaintiff's choice include "'[1] the convenience of the plaintiff's residence in relation to the chosen forum, [2] the availability of witnesses or evidence to the forum district, [3] the defendant's amenability to suit in the forum district, [4] the availability of appropriate legal assistance, and [5] other reasons relating to convenience or expense'"; factors weighing against the plaintiff's choice "include '[1] attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, [2] the habitual generosity of juries in the United States or in the forum

---

[4] Accord, <u>e.g.</u>, <u>In re Herald</u>, 540 F. App'x 19, 26 (2d Cir. 2013), <u>cert. denied</u>, 135 S. Ct. 1701 (2015); <u>Villella</u> v. <u>Chem. & Mining Co. of Chile Inc.</u>, 15 Civ. 2106, 2017 WL 1169629 at *5-6 (S.D.N.Y. Mar. 28, 2017); <u>Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S.</u> v. <u>Kyrgyz Republic</u>, 12 Civ. 4502, 2016 WL 5793399 at *4 (S.D.N.Y. Sept. 30, 2016); <u>Crescendo Mar. Co.</u> v. <u>Bank of Commc'ns Co.</u>, 15 Civ. 4481, 2016 WL 750351 at *7 (S.D.N.Y. Feb. 22, 2016).

[5] Accord, <u>e.g.</u>, <u>Simmtech Co.</u> v. <u>Citibank, N.A.</u>, 634 F. App'x 63, 64 (2d Cir. 2016); <u>In re Herald</u>, 540 F. App'x at 26; <u>Villella</u> v. <u>Chem. & Mining Co. of Chile Inc.</u>, 2017 WL 1169629 at *5-6.

district, [3] the plaintiff's popularity or the defendant's unpopularity in the region, or [4] the inconvenience and expense to the defendant resulting from litigation in that forum.'" Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d at 155 (quoting Iragorri v. United Techs. Corp., 274 F.3d 65, 72 (2d Cir. 2001) (en banc)).[6]

       After consideration of the above factors, the Court finds that GTII's choice of forum was motivated by "genuine convenience." Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d at 155. Although incorporated in other states, GTII and GT International Group share office space in New York City. (See pages 1-2 above; see also Dkt. No. 27: GTII Opp. Br. at 13.) Reichman, who negotiated and executed the Stock Purchase Agreement on behalf of GTII and GT International Group, is a New York City resident. (See page 2 above.) The purpose of the Agreement was to provide Go Fun with access to U.S. capital markets and Go Fun was to provide GTII information for eventual submission to U.S. regulators. (See pages 2-3 above; see also GTII Opp. Br. at 13.)[7] GTII had no reason to doubt Go Fun's amenability to suit in New York City, as the two preliminary agreements dated February and April 2016 contained forum selection clauses specifying "the state and federal courts in the City of New York" as the proper forum for dispute resolution. (See page

---

[6]    Accord, e.g., Villella v. Chem. & Mining Co. of Chile Inc., 2017 WL 1169629 at *6; Crescendo Mar. Co. v. Bank of Commc'ns Co., 2016 WL 750351 at *7.

[7]    Go Fun notes that "[t]he GT Entities availed themselves to Hong Kong when they went to Hong Kong repeatedly to enter into a business transaction with exclusively Hong Kong based individuals and entities." (Dkt. No. 35: Go Fun Br. at 14; see also Dkt. No. 29: Go Fun Reply Br. at 10.) To be sure, "[l]ess deference is given to plaintiff's choice [of forum] when the action is not in tort, when the plaintiff sought out the transaction giving rise to the suit, when suit in the international forum was foreseeable in light of the transaction, and when the plaintiff is an organization—rather than an individual—that can easily handle the difficulties of engaging in litigation abroad." ICC Indus. Inc. v. Israel Disc. Bank, Ltd., 170 F. App'x 766, 767-68 (2d Cir. 2006). But because Go Fun similarly sought out GTII for the purpose of availing itself of U.S. markets subject to U.S. regulations, on balance this factor is neutral.

3 above; see also GTII Opp. Br. at 14.)[8] Go Fun, moreover, communicated with GTII through a New York City-based attorney. (See page 2 above.)

Conversely, Go Fun does not allege that GTII was motivated by advantageous local laws, the generosity of U.S. juries, or Go Fun's unpopularity in this forum. (See generally Go Fun Br. at 13-14.) Only the "availability of witnesses and evidence" factor potentially calls GTII's motivations into question. (See Go Fun Br. at 14.) With respect to that factor, Go Fun argues that "most of the witnesses to attack the validity of the Stock Purchase Agreement are located in Hong Kong and do not speak English very well (or at all in certain circumstances)," and that relevant documents are written in Chinese. (Id.) GTII responds that communications between the parties over email, telephone and letter were in English, and that given Hong Kong's dual-language system, "evidentiary materials will need to be prepared in English" in any event. (See GTII Opp. Br. at 15-16.) The Court finds no reason to believe that GTII's selection of this forum was motivated in whole or in part by the disadvantageous (to Go Fun) location of witnesses and foreign languages.[9]

---

[8] The Court cites these agreements only for the proposition that, based on prior dealings, GTII was justified in believing that Go Fun was amenable to suit in this District. Drawing this inference does not require the Court to read a forum selection clause into the Stock Purchase Agreement, and thus does not implicate the arguments in Go Fun's reply brief. (See Go Fun Reply Br. at 8-9.)

[9] Go Fun cites no cases for the proposition that GTII was required to assume fraud would be asserted as a defense to enforcement of the Agreement and/or that proving Go Fun's defenses would necessitate the testimony of Hong Kong-based witnesses. (See generally Go Fun Br. at 13-14.) Moreover, the fact that "[t]here is little, if any, connection between the underlying events or occurrences to New York" (Go Fun Br. at 14) is largely irrelevant to GTII's choice of forum. From the perspective of a party attempting to enforce a contract containing an integration clause (see page 3 above), there are no relevant "underlying events" apart from the contract itself (see, e.g., Go Fun Reply Br. at 8). Finally, for the reasons already discussed (see pages 8-9 above), the Court finds that Go Fun proffers its first-filed argument (see Go Fun Br. at 14) with unclean hands.

The Court thus finds that under the totality of the circumstances, the "strong presumption" in favor of GTII's choice of forum is preserved.  Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 154 (2d Cir. 2005) (quotations omitted), cert. denied, 547 U.S. 1175, 126 S. Ct. 2320 (2006).

### B.  Hong Kong Is An Adequate Alternative Forum

"At step two, [the Court] considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute."  Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005), cert. denied, 547 U.S. 1175, 126 S. Ct. 2320 (2006).  "'An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute.'"  Id., 416 F.3d at 157.[10/]

"Hong Kong has uniformly been considered an adequate alternative forum for commercial disputes."  Yung v. Lee, 00 Civ. 3965, 2002 WL 31008970 at *2 (S.D.N.Y. Sept. 5, 2002), aff'd in relevant part, 432 F.3d 142 (2d Cir. 2005); accord, e.g., Shanahan v. Vallat, 03 Civ. 3496, 2004 WL 2937805 at *10 (S.D.N.Y. Dec. 19, 2004).  Although GTII has not yet been served in the Hong Kong action (see page 7 above), it does not dispute that it is amenable to service of process and would be permitted to litigate this dispute in that forum (see generally Dkt. No. 27: GTII Opp. Br. at 13-16).  The Court therefore finds Hong Kong to be an adequate alternative forum.

---

[10/]     Accord, e.g., Wenzel v. Marriott Int'l, Inc., 629 F. App'x 122, 124-25 (2d Cir. 2015); In re Herald, 540 F. App'x 19, 27 (2d Cir. 2013); Spencer Stuart Human Res. Consultancy Co. v. Am. Indus. Acquisition Corp., 17 Civ. 2195, 2017 WL 4570791 at *4 (S.D.N.Y. Oct. 12, 2017); Villella v. Chem. & Mining Co. of Chile Inc., 15 Civ. 2106, 2017 WL 1169629 at *7 (S.D.N.Y. Mar. 28, 2017); Crescendo Mar. Co. v. Bank of Commc'ns Co., 15 Civ. 4481, 2016 WL 750351 at *8 (S.D.N.Y. Feb. 22, 2016).

**C.      The Public And Private Interests Implicated Do Not Outweigh The Deference Afforded To Plaintiffs' Choice Of Forum**

"[A]t step three, the district court 'balances the private and public interests implicated in the choice of forum.'" <u>Spencer Stuart Human Res. Consultancy Co.</u> v. <u>Am. Indus. Acquisition Corp.</u>, 17 Civ. 2195, 2017 WL 4570791 at *4 (S.D.N.Y. Oct. 12, 2017).

> [T]he greater the degree of deference to which the plaintiff's choice of forum is entitled, the stronger a showing of inconvenience the defendant must make to prevail in securing <u>forum non conveniens</u> dismissal.  At the same time, a lesser degree of deference to the plaintiff's choice bolsters the defendant's case but does not guarantee dismissal. . . .  The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable.

<u>Iragorri</u> v. <u>United Techs. Corp.</u>, 274 F.3d 65, 74-75 (2d Cir. 2001) (en banc).

"The first set of factors considered are the private interest factors—the convenience of the litigants."  <u>Id.</u> at 73.

> These include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."

<u>Id.</u> at 73-74.  The Court next considers the public interest factors, which include

> the administrative inefficiency in trying a case in a busy court and away from the locus of the injury; the burden that jury duty may impose on the community if the case is tried in a venue with no connection to the issues in dispute; a community's interest in having a local case decided at home; and the benefits to having a matter tried in the forum whose law will govern the case.

<u>Spencer Stuart Human Res. Consultancy Co.</u> v. <u>Am. Indus. Acquisition Corp.</u>, 2017 WL 4570791 at *5.

**1.      Private Interest Factors**

Go Fun argues that the private interest factors weigh in favor of litigation in Hong Kong because relevant documents are located in Hong Kong and are written in Chinese (Dkt. No.

35: Go Fun Br. at 15); Go Fun's fraud-based defense to enforcement of the Agreement will necessitate witness testimony from mostly Chinese-speaking Hong Kong residents, and litigating in this forum therefore will be costly and inconvenient (id. at 15-16); and GTII's requested injunctive relief would be more easily enforced by a Hong Kong court (id. at 16-17).  GTII responds that the Agreement required documents "to be prepared in English for filing with U.S. regulators" (Dkt. No. 27: GTII Opp. Br. at 15); even if litigated in Hong Kong, the relevant "evidentiary materials will need to be prepared in English for use in the dual language court" (id.); communications between the parties conducted via email, telephone and letter were in English (id.; see also pages 2, 13 above); and any documents physically located in Hong Kong easily can be produced in digital form (GTII Opp. Br. at 15-16).

  The Court agrees with GTII (see GTII Opp. Br. at 16) that modern technology largely negates any inconveniences related to production of documents physically located in Hong Kong. See, e.g., Shtofmakher v. David, 14 Civ. 6934, 2015 WL 5148832 at *3 (S.D.N.Y. Aug. 17, 2015) ("'[I]n light of technological advances in transportation and communication, . . . the location of documents is a factor which is to be given less weight now.'").  The private interest factors concern the practicalities of litigation, see, e.g., Iragorri v. United Techs. Corp., 274 F.3d 65, 74 (2d Cir. 2001) (private interest factors generally include "practical problems that make trial of a case easy, expeditious and inexpensive"), and Go Fun makes no argument that the current location of documents presents any practical difficulties given modern technology.  (See Go Fun Reply Br. at 9-10.)  See also, e.g., Reynolds v. Xerox Educ. Servs., LLC, 13 Civ. 1003, 2013 WL 5303797 at *2 (S.D.N.Y. Sept. 20, 2013) (in the context of a motion to change venue pursuant to 28 U.S.C. § 1404(a), "'[t]he location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.'").

Go Fun also asserts that "a substantial amount of the documents and communications which Defendants rely on to show that [the] Stock Purchase Agreement was an instrument of fraud are not written in English" (Go Fun Br. at 15 (citing Dkt. No. 36: Fong Aff. ¶ 11)), but provides no details on these documents' nature, content or number. GTII responds—and Go Fun does not contest (see generally Dkt. No. 29: Go Fun Reply Br.)—that such documents "will need to be prepared in English for use in the dual language court in Hong Kong" in any event (GTII Opp. Br. at 15). Furthermore, GTII has submitted communications between the parties written in English (see, e.g., Dkt. Nos. 27-4, 27-5, 27-6, 27-7, 27-9); Go Fun has submitted its Indorsement of Claim filed with the High Court of Hong Kong, which is written in English (see Dkt. No. 37: Lo Aff. Ex. A: Indorsement of Claim); and the Stock Purchase Agreement is entirely in English (see generally Dkt. No. 7-1: Stock Purchase Agreement). In sum, some of the pertinent documents in this case are already in English. The Court thus finds that the potential necessity of document translation does not weigh heavily in favor of litigation in Hong Kong. See, e.g., Petersen Energia Inversora, S.A.U. v. Argentine Republic, 15 Civ. 2739, 2016 WL 4735367 at *12 (S.D.N.Y. Sept. 9, 2016) ("[S]ome of the relevant documents have been translated already, and the Court finds that the cost of translating the remaining documents in this case would not be such an unreasonable burden on the parties that the Plaintiffs' choice of forum should be disturbed." (record citation omitted)).

As with its assertions regarding relevant documents, Go Fun provides no details regarding the Hong Kong-based "key witnesses" that allegedly will be inconvenienced by litigating in this forum. (See, e.g., Go Fun Br. at 16.) Go Fun does not disclose, for example, these witnesses' names, titles, evidence to which they—but no one else—can testify, or even how many there are. (See id.) See also, e.g., Reynolds v. Xerox Educ. Servs., LLC, 2013 WL 5303797 at *2 ("The moving party must submit 'a specific list of probable witnesses who will be inconvenienced by the

current forum and a general statement of what the witnesses' testimony will cover.'").[11] Furthermore, Go Fun submitted the declaration of Fong Yiu Yuen, who asserts that he "personally participated in all of the negotiations" and "attended all meetings between the" parties. (See pages 2-3 above.) If Fong participated in all negotiations and meetings, it is unclear what testimony can be provided by additional witnesses that would not be cumulative. See, e.g., Ricoh Corp. v. M/V Ming Plenty, 01 Civ. 6268, 2002 WL 109576 at *2 (S.D.N.Y. Jan. 25, 2002) (giving little weight to convenience of witnesses because, "[o]f defendants' seven witnesses with knowledge of the facts giving rise to this case, only one or two would likely be called since the witnesses' knowledge appears in the main to be cumulative.").[12] Without information regarding additional witnesses, the Court finds the potential inconvenience to Fong, Cheng and Tam of appearing for trial in this forum is worth little weight.[13]

Finally, to the extent GTII will "have to commence a new action in Hong Kong High Court and invoke the res judicata doctrine under common law" to enforce any judgment for injunctive relief obtained in this forum (Go Fun Br. at 16), that does not detract from GTII's

---

[11] Accord, e.g., Metito (Overseas) Ltd. v. Gen. Elec. Co., 05 Civ. 9478, 2006 WL 3230301 at *6 (S.D.N.Y. Nov. 7, 2006) (Lynch, D.J.) ("[D]efendant's briefs do not identify a single potential witness who would be unable or unwilling to appear in New York. This is significant, as 'such identification is generally required for a forum non conveniens dismissal.'").

[12] Accord, e.g., Shtofmakher v. David, 2015 WL 5148832 at *3 ("Although supplemental testimony from foreign witnesses may be germane, the testimony of many of the witnesses identified by Defendants would likely be cumulative.").

[13] Go Fun claims that the Court lacks personal jurisdiction over defendants Cheng and Tam. (See, e.g., Go Fun Reply Br. at 11.) GTII obviously takes the risk that the Court will dismiss the individual defendants. GTII's only claims against Cheng and Tam relate to the indemnity provision of the Agreement (see page 3 above), which may not be applicable to GTII's lawsuit.

prerogative to initiate suit here. Indeed, "[t]he Second Circuit has stated that . . . [p]arallel proceedings in the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." Kitaru Innovations Inc. v. Chandaria, 698 F. Supp. 2d 386, 390 (S.D.N.Y. 2010) (quotations omitted); see also section I above. The Court therefore finds this factor worth little weight.

### 2. Public Interest Factors

Go Fun argues that the public interest factors weigh in favor of litigation in Hong Kong because "it takes on average 28 months for a civil case to proceed to trial in" this district, whereas "it takes approximately 24 months to proceed to trial in Hong Kong" (Dkt. No. 35: Go Fun Br. at 17); Hong Kong has an interest in having this Hong Kong-centric dispute litigated in that forum, and New York residents should not be burdened with jury service on a foreign dispute (id. at 18); and New York is an inappropriate forum because Nevada law applies to the Agreement, GTII seeks relief that will require the application of Hong Kong corporate and securities law, and Hong Kong law "may apply for some of the claims and defenses" given that "the alleged fraud (by both parties) took place in Hong Kong" (id. at 18-19). GTII responds that this case already has proceeded further than its Hong Kong counterpart, and therefore time-to-trial averages likely favor continued litigation here. (Dkt. No. 27: GTII Opp. Br. at 16.)

The public interest factors do not weigh in favor of dismissal. General time-to-trial averages in this District are irrelevant: the parties have consented to decision of the case before me pursuant to 28 U.S.C. § 636(c) (see Dkt. No. 31), and I run a "rocket docket." See Individual Practices of Magistrate Judge Andrew J. Peck at 4, http://www.nysd.uscourts.gov/cases/show.php?db=judge_info&id=1179. Moreover, for reasons already discussed (see pages 12-13 & n.7 above), it cannot be said that this case bears no connection to this forum. Finally, the fact that

Nevada law applies to disputes arising under the Agreement does not weigh in favor of litigation in Hong Kong, and in any event, "'federal courts are deemed capable of applying the substantive law of other states.'" Liberty Mut. Ins. Co. v. Fairbanks Co., 17 F. Supp. 3d 385, 398 (S.D.N.Y. 2014).

### D. Balancing All The Factors

On balance, the Court finds that factors weighing slightly in favor of litigating this dispute in Hong Kong—namely, convenience to Go Fun's largely unidentified witnesses (see pages 18-19 above)—do not outweigh the substantial deference owed to GTII's choice of forum (see pages 11-14 above). Go Fun's motion to dismiss on the basis of forum non conveniens is DENIED.

## CONCLUSION

For the reasons set forth above, Go Fun's motion to dismiss (Dkt. No. 34) on the basis of the abstention doctrine or forum non conveniens is DENIED. The Court will hold the Initial Pretrial Conference on November 14, 2017 at 2:00 P.M. in Courtroom 20D, 500 Pearl Street.

SO ORDERED.

Dated:      New York, New York
            November 2, 2017

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies ECF to:      All Counsel